[2] This court, however, was not in session during August, and the appellants contend that:

"If the Supreme Court is not in session on the day fixed for the return day, the transcript of appeal is filed in time, when it is filed before the third after the (first day of) the next session of the Supreme Court."

This was the jurisprudence of this court under Act 45, p. 100, of the Extra Session of 1870; but that act was modified on this point by Act 92, p. 150, of 1900. Brooks v. Smith, 118 La. 759, 43 South. 399; Welch v. Smith, 118 La. 761, 43 South. 400; Carrol v. Magee, 118 La. 761, 43 South. 400; and Keplinger v. Barrow, 132 La. 244, 61 South. 217. Appellants contend that said act of 1870, in so far as applicable to appeals, in cases like the present, was adopted into the Constitution by said article 285; and that, consequently, the Legislature was powerless to modify it. They argue that said article 285, by granting an appeal, granted such an appeal as the legislation then in existence had provided for; that this was the kind of appeal the framers of that article had in mind, and not some other kind of appeal, such as the Legislature might thereafter provide for.

Appellants here confuse between the appeal, or the right to have the decision of the lower court reviewed by the higher court, and the procedure by means of which that right is to be exercised, or, in other words, the procedure by which the case is to be carried from the lower to the higher court. Manifestly, the framers of article 285 intended merely to grant this right of review, and not to adopt into the organic law of the state mere rules of procedure. Let it be noted that if article 285, by granting a right of appeal in cases like the present, has incorporated into the Constitution, for the purposes of cases like the present, all the legislation which governed appeals at the time of the adoption of the Constitution, so, in like manner, all the other articles of the Constitution, granting appeals in all other cases, have incorporated this same legislation for the purposes of all these other cases; and, that, as a consequence, the matter of procedure in appeals is part of the organic law and unchangeable by the Legislature. Surely nothing of the kind would be seriously contended.

The appeal is dismissed.

---

(61 South. 446.)

No. 19,235.

STOCKSTILL v. BYRD.

(March 3, 1913.)

*(Syllabus by the Court.)*

1. CONTRACTS (§ 171*)—CONSTRUCTION—DIVISIBLE OR INDIVISIBLE OBLIGATION.

"An obligation is divisible or indivisible according as it has for its object either a thing which, in its delivery, or a fact which, in its execution, is or is not susceptible of division, either material or intellectual." Civ. Code, art. 2108.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 754–757; Dec. Dig. § 171.*]

2. CONTRACTS (§ 171*) — CONSTRUCTION — DIVISIBLE OR INDIVISIBLE OBLIGATION.

"The obligation is indivisible though the thing, or the fact which is the object of it, be by its nature divisible, if the light, in which it is considered in the obligation, does not admit of its being partially executed." Civ. Code, art. 2109.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 754–757; Dec. Dig. § 171.*]

3. CONTRACTS (§ 173*) — CONSTRUCTION — DIVISIBLE OR INDIVISIBLE OBLIGATION.

The courts at the present day incline strongly against the construction of promises in a contract as independent; and, in the absence of clear language to the contrary, promises which form the consideration for each other will be held to be concurrent and dependent, and not independent. 9 Cyc. 643; Lowber v. Bangs, 2 Wall. 728, 17 L. Ed. 768.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 762–764; Dec. Dig. § 173.*]

4. CONTRACTS (§ 171*) — CONSTRUCTION — DIVISIBLE OR INDIVISIBLE OBLIGATION.

Contracts are to be considered divisible or indivisible, dependent or independent, separable or entire, according to the intention of the parties, which is to be deduced from the whole instrument. Philadelphia Railroad Co. v. Howard, 13 How. 312, 14 L. Ed. 157.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 754–757; Dec. Dig. § 171.*]

*(Additional Syllabus by Editorial Staff.)*

5. LOGS AND LOGGING (§ 3*)—SALE OF STANDING TIMBER—BREACH OF CONTRACT.

Where defendant sold timber standing on his premises to plaintiff to be manufactured into lumber by plaintiff on defendant's premises, and plaintiff, after erecting a mill, sold it to third persons, he violated the entire contract, and is not entitled to recover of defendant damages for the latter's refusal to deliver the timber.

[Ed. Note.—For other cases, see Logs and Logging, Cent. Dig. §§ 6–12; Dec. Dig. § 3;* Contracts, Cent. Dig. § 890.]

Appeal from Twenty-Sixth Judicial District Court, Parish of Washington; Thos. M. Burns, Judge.

Action by W. A. Stockstill against J. R. Byrd. From a judgment dismissing the suit, plaintiff appeals. Affirmed.

Miller & McDougall, of Franklinton, for appellant. Ott, Johnson & Ott, of Bogalusa, and R., C. & S. Reid, of Amite, for appellee.

SOMMERVILLE, J. Plaintiff sues for damages ex contractu; and defendant filed an exception of no cause of action to the pe-

tition. The exception was sustained; the suit was dismissed; and plaintiff appeals.

Plaintiff attaches to, and makes part of, his petition the contract sued upon. It therein appears that plaintiff agreed to go upon the land of the defendant and there erect and locate a sawmill for the purpose of manufacturing into lumber certain described timber located on defendant's land. Plaintiff further agreed to operate said mill continuously, and as regularly as practicable, until the timber on said land was manufactured into lumber. He further agreed that defendant was to be the sole logger of the mill. He agreed to use the property of defendant for no other purpose than was necessary and proper for operating said sawmill. He further agreed to give orders and bills for logs in such manner as to make it practicable for defendant to deliver with the exercise of due diligence, and to purchase said timber and pay to defendant $5 per 1,000 feet therefor.

Defendant, on his part, agreed to sell all of the timber described in the contract to plaintiff and deliver it at the ramps of the sawmill of plaintiff, according to orders and bills furnished by the latter.

The parties to the contract mutually agreed that:

"This contract is not to be assignable by either party hereto without the consent of both."

Plaintiff alleges in his petition that he had sold his sawmill to Eddins & Stockstill, and that, upon the consummation of said sale, defendant wrongfully and without cause refused to haul or deliver any more of said timber to petitioner, although requested so to do; that, in thus refusing, defendant has breached the contract, and this to the extent of $17,150, for which amount plaintiff asks judgment.

No precise rule can be laid down for the solution of the question whether a contract is divisible or indivisible, separable or entire. The question is one of construction.

[1] Article 2108 of the Civil Code provides that:

"An obligation is divisible or indivisible, according as it has for its object either the thing which, in its delivery, or a fact which, in its execution, is or is not susceptible of division, either material or intellectual."

[2] And article 2109 is as follows:

"The obligation is indivisible, though the thing or the fact which is the object of it be by its nature divisible, if the light in which it is considered in the obligation does not admit of its being partially executed."

[3] The courts at the present day incline strongly against the construction of promises as independent; and, in the absence of clear language to the contrary, promises which form the consideration for each other will be held to be concurrent or dependent, and not independent, so that a failure of one party to perform will discharge the other, and so that one cannot maintain an action against the other without showing the performance or tender of performance on his part. Where acts are to be performed by each party at the same time, neither party can maintain an action against the other without performance, or tender of performance, on his part. So where a party sues on a certain contract to recover compensation due on its performance, he must show performance on his part, or a legal excuse.

"The contract may be entire or separable, according to the circumstances in each particular case; and the criterion is to be found in the question whether the whole quantity—all of the things as a whole—is of the essence of the contract. If it appear that the purpose was to take the whole or none, then the contract would be entire; otherwise it would be separable." 9 Cyc. 643, 649; Lowber v. Bangs, 2 Wall. 728, 736 (17 L. Ed. 768).

In construing the contract under consideration, we must determine which of the numerous provisions are conditions precedent, and which are mutual and independent stipulations.

"It seems to be well settled that, when there is a stipulation amounting to a condition precedent, the failure of one party to perform such condition will excuse the other party from all further performance of stipulations depending upon such prior performance. But a failure to perform an independent stipulation, not amounting to a condition precedent, though it subjects the party failing to damages, does not excuse the party on the other side from the performance of all stipulations on his part." Mill Dam Foundery v. Hovey, 21 Pick. (Mass.) 417, 437.

[5] This is a contract of sale by defendant to plaintiff of the timber standing on defendant's premises to be manufactured into lumber by plaintiff on defendant's premises; the real property and the material belonging to defendant. The plaintiff was to enter upon the property of defendant, under a contract in the nature of a lease, for the express purpose of erecting a sawmill thereon to do the work of converting defendant's timber into lumber, and to use defendant's premises for the purposes of the contract. The condition precedent in this contract is that plaintiff was to enter upon the land of defendant, and to thereon erect a sawmill, ramps, and appurtenances for the purpose already indicated; and he agreed to operate the sawmill continuously and as regularly as practicable until the timber on the land referred to was manufactured into lumber; plaintiff agreeing not to use the property of defendant for any other purpose than was necessary and proper for operating the said sawmill, together with the necessary right of way and passage over and across the land for hauling purposes. It was further agreed that defendant should be the sole logger of the sawmill, and that the contract was not assignable without the consent of both parties.

Plaintiff has made these obligations on his part impossible of performance. He erected the sawmill as agreed to by him, but sold the same to some third persons, so that he had no mill to operate continuously until all the timber belonging to defendant on the land in question had been converted into lumber. The sale of the mill to third per-

sons is equivalent to not having erected the mill at all, under the circumstances of this contract. Further, he has avoided and set at naught the stipulation that defendant was to be the sole logger of his sawmill; the management of the mill was exclusively in the control of the purchasers of the mill; and he has permitted the land of defendant to be used by these purchasers, after stipulating that defendant's land was not to be used for any other purpose than of operating his sawmill.

These various stipulations all go to show that the contract sued upon cannot be partially executed, and it is therefore indivisible or entire.

Plaintiff argues that he has not violated the contract by selling his sawmill to third persons; that his agreement was not to assign the contract; that he has not assigned the contract to the purchasers of the sawmill; that he is willing to receive and pay for the logs purchased by him from the defendant; that, because of the failure and refusal of defendant to sell the logs to him (plaintiff), he (plaintiff) "was unable to sell and deliver said logs to the said Eddins & Stockstill"; and that said action on the part of defendant caused the purchasers of the sawmill to purchase other logs, and that they have refused to pay plaintiff for the mill, and that he has taken the sawmill back.

We think that it is quite clear, from the actions of the purchasers of the mill, that the contract between plaintiff and defendant was assigned to them at the same time that the mill was, although plaintiff alleges to the contrary.

Be this as it may, plaintiff has put himself into a different position altogether from that contemplated by the terms of the contract. He is a nonresident, residing in Hancock county, Miss.; and defendant might well be unwilling to sell his timber on credit to a nonresident who owned no property in this state, and who was to immediately transfer the timber of defendant to third persons, who were operating a sawmill located on land not belonging to them, or leased by them, and who might at any time be treated as trespassers, and who could exercise the right to saw timber belonging to third persons, and thus bring about a confusion of goods belonging to defendant, and thus deprive defendant of a vendor's lien. The purchasers were not obligated in any way to defendant; he had not dealt with them; they had not promised to take all of his timber, or to manufacture it into lumber within a specified time; he may not have known them to be prompt in the fulfillment of engagements, which is said to be the life of commercial success; he may have known nothing of their solvency, or of the various other circumstances which go to control the issues of profit or loss—all of which are important in trade. Lowber v. Bangs, 2 Wall. 728, 737 (17 L. Ed. 768).

[4] We do not deem it needful to review the numerous authorities, because we hold the general principle to be clear that covenants are to be considered divisible or indivisible, dependent or independent, separable or entire, according to the intention of the parties, which is to be deduced from the whole instrument; and in this case we find no difficulty in arriving at the conclusion that the covenants are dependent throughout. The intention of the parties was that the contract was not to be assignable, in whole or in part, and that when plaintiff sold his sawmill to third persons, and brought them onto the land of defendant and established them there, without the consent of defendant, and thus rendered the contract impossible of performance by himself, he violated the contract in its entirety; that he is in default and cannot claim damages for nonperformance by defendant. C. C. art. 2109.

The judgment appealed from is affirmed.